# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel. Kenneth Kraemer, and Kenneth Kraemer and Kraemer Farms, LLC, a Minnesota limited liability company, | Civil No. 16-3092 (DWF/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| United Dairies L.L.P., a Minnesota limited Liability partnership; Union Dairy, L.L.P., a Minnesota limited liability partnership; Westland Dairy, LLP, a Minnesota limited liability partnership; Alpha Foods, L.L.P., a Minnesota limited liability partnership; Nicholas Ridgeway; Craig Achen; Steven Landwehr; Thomas Landwehr; Matthew Landwehr; Robert Hennen; Silverstreak Dairies, LLC, a Minnesota limited liability company; Greg Marthaler; Marthaler Properties Family LLLP, a Minnesota limited liability limited partnership, d/b/a Marthaler Farms; and Dairyridge, Inc., a South Dakota corporation, | |
| Defendants. | |

Chad A. Blumenfield and Pamela A. Marentette, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff United States of America, ex rel. Kenneth Kraemer.

Matthew Albin Anderson, Esq., Law Office of Matthew A. Anderson; and Julie N. Nagorski, Esq., and Dwight G. Rabuse, Esq., DeWitt Mackall Crounse & Moore, S.C., counsel for Plaintiffs Kenneth Kraemer and Kraemer Farms, LLC.

Anna K. B. Finstrom, Esq., Gary R. Leistico, Esq., and Alexander T. Mastellar, Esq., Rinke Noonan, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on Defendants' motion to dismiss or stay certain counts in Plaintiffs' Complaint based on an arbitration agreement entered into by Plaintiff Kenneth Kraemer and multiple defendants.  (Doc. No. 34.)  In conjunction with this motion, Defendant Silverstreak Dairies, LLC also moves for summary judgment dismissal of all claims against it pursuant to Federal Rule of Civil Procedure 56.  (*See id.*)  Finally, Plaintiffs have moved this Court to stay a pending arbitration proceeding.  (Doc. No. 43.)  For the reasons set forth below, the Court grants the motion to dismiss Kraemer Counts Two and Three as these counts are subject to mandatory arbitration.  The Court denies the remaining motions in all respects.

**BACKGROUND**

I.     **Factual Background**

A.     **Plaintiffs' Allegations and the *Qui Tam* Lawsuit**

Plaintiff Kenneth Kraemer ("Kraemer") is a partner in Defendants Union Dairy, L.L.P. ("Union") and United Dairies, L.L.P. ("United"), Minnesota partnerships involved in dairy farming operations.  (Doc. No. 37 ("R. Hennen Decl.") ¶ 3, Ex. 1 ("Union Agreement") at 1, §§ 1.3, 2.1; R. Hennen Decl. ¶ 4, Ex. 2 ("United Agreement") at 1, §§ 1.3, 2.1.)  The partnerships also grow corn or contract with other growers to produce corn crops.  (*See* Doc. No. 1 ("Compl.") ¶¶ 32, 57.)  Farmers may obtain crop insurance from the federal government to protect against crop losses, and applicants for federal crop insurance must certify what type of corn has been planted to receive crop insurance payments.  (*See id.* ¶¶ 1-5.)

2

In the fall of 2013, United, through one of its partners, claimed revenue losses made up of grain corn to United's crops and obtained crop insurance proceeds from the federal government. (*Id.* ¶¶ 34, 36.)  United made similar claims for losses in 2014 and 2015, obtaining crop insurance proceeds in both years. (*Id.* ¶¶ 41, 43, 48, 50.)  In the fall of 2014, Kraemer began to suspect that United may have been falsely certifying the type of crop it planted in obtaining insurance. (*See id.* ¶¶ 52, 53.)  Specifically, Kraemer suspected that United was falsely certifying that crops planted as silage-specific forage corn were grain corn fit for human consumption and receiving insurance payments on that basis. (*See generally id.* ¶¶ 26, 28-50.)  According to Plaintiffs, a United States Department of Agriculture Federal Crop Insurance Corporation handbook interpreting the requirements of the Federal Crop Insurance Act, 7 U.S.C. § 1501, and related regulations provides that "a variety of corn that is adapted for use as silage only is not insurable as grain and must be insured as silage." (*See id.* ¶ 26.)  Plaintiffs allege similar crop insurance fraud by other entities, including Defendants Union; Westland Dairy, LLP; Alpha Foods, L.L.P.; Marthaler Farms; Dairyridge, Inc.; and Silverstreak Dairies, LLC. (*Id.* ¶¶ 28-71.)

Troubled by the possibility that the partnership might have received insurance proceeds through fraud, Kraemer met with United's managing partner on September 11, 2014 to explain his concerns. (*See id.* ¶ 52.)  The managing partner told Kraemer that he would look into the matter, but no corrective action was taken. (*Id.* ¶¶ 52-55.)  Kraemer conducted an investigation into the possible fraud against the government and retained his own counsel to remedy the alleged wrongdoing. (*Id.* ¶¶ 55-56.)

According to Kraemer, in October 2014, the other United partners began to retaliate against him by providing themselves compensation for management activities without compensating Kraemer, disproportionately paying distributions, and excluding Kraemer from partnership management.  (*Id.* ¶¶ 54, 83-85.)  Kraemer and the other United partners subsequently began communicating with each other exclusively through their respective counsel.  (*See id.* ¶¶ 54-56.)  On July 29, 2016 and August 2, 2016, counsel for Kraemer sent a letter to counsel for United, relaying Kraemer's allegations regarding the crop insurance fraud and the other partners' retaliatory conduct.  (Doc. No. 48 ("Rabuse Aff.") ¶¶ 5, 6, Exs. C & D.)  On September 15, 2016, Kraemer and Kraemer Farms, LLC, as plaintiffs and relator, filed a *qui tam* complaint under seal against United, United's partners, and other defendants in this court.  (*See* Compl.)

### B.    The United Dairies Partnership Agreement

The Partnership Agreement of United Dairies, L.L.P. (the "United Agreement"), effective April 18, 2005 among Craig Achen, James Ridgeway, Robert Hennen, Ken Kraemer, Jon Reichman, Ronald Reichman, Theodore Reichman, and Thomas Landwehr, states:

> Any claim, dispute or other matter in question arising in connection with the Partnership, this Agreement or any breach thereof, or in connection with the dissolution of the Partnership shall be resolved exclusively by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and in the State of Minnesota, unless the parties agree otherwise.  The foregoing agreement to arbitrate shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

(United Agreement at 1, § 16.1.)  It further provides:

4

> Any arbitration conducted hereunder shall include, by consolidation or joinder, all parties and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. Provided, however, that if any third party or parties, whose joinder is required under this paragraph, refuses to join or is/are unable to be joined in the arbitration, then the arbitration provisions of this Agreement shall be waived and shall not apply to the resolution of the dispute which requires such joinder. In all other cases, the arbitration provision shall apply.

(*Id.* § 16.2.)  Kraemer was also a signatory to the Partnership Agreement of Union Dairy, L.L.P. (the "Union Agreement") containing identical arbitration provisions.  (*See* Union Agreement at 1, §§ 16.1, 16.2.)

Through the execution of an Ownership Interest Purchase Agreement effective January 1, 2015 (the "January 2015 Agreement"), a number of partners within United Dairies reorganized their ownership interests in various entities.  (*See* R. Hennen Decl. ¶ 5, Ex. 3 & ¶ 10.)  Specifically, the January 2015 Agreement was entered into between United Dairies, L.L.P.; United Dairies Holdings, L.L.P.; Allied Dairy, LLP; United, Inc.; Craig Achen; Nick Ridgeway; Robert Hennen; Thomas Landwehr; Steven Landwehr; and Mathew Landwehr.  (R. Hennen Decl. ¶ 5, Ex. 3 at 1.)  Robert Hennen stated, "[a]lthough we invited Ken Kraemer to participate in the reorganization and for a long time hoped that he would, he ultimately refused to take part in the 2015 agreement."  (*Id.* ¶ 10.)  He asserted, "while the rest of us are now governed by [the January 2015 Agreement], Ken Kraemer's partnership interests in Union and United continue to be governed by [the original Union and United Agreements]."  (*Id.* ¶ 11.)

### C.      Allegations Against and Discovery Pertaining to Silverstreak Dairies

As noted above, Silverstreak Dairies, LLC ("Silverstreak") is one of multiple

defendant entities in this matter.  (*See* Compl. ¶¶ 16, 68-71.)  Plaintiffs allege that

Silverstreak's wrongful actions mirror United's.  (*Id.* ¶ 68.)  Specifically, Plaintiffs allege

the following with respect to Silverstreak:

> 69.     [Robert] Hennen actively promotes the BMR silage-corn
> product.
> 70.     [Robert] Hennen and his entity, Silverstreak, own
> approximately 1,900 tillable acres and use them to grow silage-specific
> BMR corn for consumption by their cows.
> 71.     Based upon information and belief, [Robert] Hennen had a
> crop insurance policy for 2013, 2014, and 2015, falsely certified that he
> grew conventional corn, certified that he sustained a loss, and obtained crop
> insurance proceeds as a result of his false representations.

(*Id.* ¶¶ 69-71.)

Along with Defendants' motion, Silverstreak has introduced evidence that it

argues demonstrates that it has always reported BMR corn as forage on its federal crop

insurance applications during the relevant years.  In particular, Defendants' Counsel,

Anna K. B. Finstrom, filed declarations with attached Silverstreak FSA-578 forms for the

years 2013, 2014, and 2015.  (Doc. No. 40 ("Finstrom Decl.") ¶ 5, Exs. A-F; Doc. No. 45

("Supp. Finstrom Decl."); Doc. No. 46 ("Second Supp. Finstrom Decl.").)  These

FSA-578 forms are a required part of the process for obtaining federal crop insurance.

(Finstrom Decl. ¶ 4.)  Relying on the FSA-578 forms, Finstrom states that in 2013, no

corn that Silverstreak certified as grain was actually planted.  (*See id.* ¶¶ 10-11.)

Finstrom also asserts that in 2014, the only reported quantities of grain that were actually

planted were on Farm 1588 and Farm 1301 in Benton County and Farm 7861 in Morrison

6

County.  (*See id.* ¶¶ 7-9.)  Finally, Finstrom states that in 2015, Silverstreak reported no

corn as grain.  (*Id.* ¶ 6.)  The Court's independent review of the FSA-578 forms generally

verified Finstrom's declarations with the exception of year 2015.  Contrary to Finstrom's

declaration,  Silverstreak appears to have certified 18.00 acres of corn as grain in Benton

County in 2015.  (*See* Second Supp. Finstrom Decl. ¶ 2, Ex. E at E-47.)

  Ann Hennen also filed a declaration in which she verified that the particular acres

certified as grain corn in 2014 were not planted with BMR.[1]  (*See* Doc. No. 39 ("A.

Hennen Decl.") ¶¶ 10-11.)  Ann Hennen is a member of Silverstreak and participated in

managing Silverstreak's crop insurance at the relevant times.  (*Id.* ¶¶ 3, 4.)  She explained

that either she or Matt Kaschmitter, another Silverstreak member, applies annually for

crop insurance at the local Farm Service Agency ("FSA") offices in Morrison and Benton

Counties.  (*Id.* ¶¶ 3, 5, 7.)  Ann Hennen or Matt Kaschmitter identified the intended use

of particular crops on Silverstreak's FSA-578 forms.  (*See* Rabuse Aff. ¶ 15, Ex. M ("A.

Hennen Dep.") at 72.)  According to Ann Hennen, Silverstreak has always certified BMR

corn as forage since being instructed to do so by Morrison County FSA representatives in

2012.  (A. Hennen Decl. ¶ 9.)

  In her deposition, Ann Hennen explained that the process for obtaining crop

insurance requires both FSA reporting as well as subsequent claims made to an insurance

agent.  (*See* A. Hennen Dep. at 10-11.)  Ann Hennen testified that Silverstreak has never

---

[1]  Specifically, Ann Hennen "verif[ied] that no BMR corn was planted on Farms
1301 and 1588 in Benton County in 2014" or "on Farm 7861 in Morrison County in
2014."  (Doc. No. 39 ("A. Hennen Decl.") ¶¶ 10-11.)

"purchased corn seed with the intention of growing corn for human consumption from that seed." (*See id.* at 25.) Ann Hennen was unsure whether Silverstreak has sought crop insurance payments specific to losses identified as grain. (*See id.* at 32.)

Plaintiffs' counsel, Dwight Rabuse, submitted an Affidavit Pursuant to Federal Rule of Civil Procedure 56(d), outlining various discovery efforts between the parties. (Doc. No. 50.) In particular, Rabuse noted that counsel for Silverstreak did not believe discovery responses were due until December 29, 2017, approximately four weeks after Silverstreak moved for summary judgment and one week after Plaintiffs filed their opposition. (*See id.* ¶¶ 6-7.) Rabuse also identified a number of records which Ann Hennen testified had been provided to her attorneys.[2] (*Id.* ¶ 8.) According to Rabuse, "[t]he records described by Ms. Hennen as in the possession of her attorneys but which have not yet been produced in discovery are obviously probative of the issues in the lawsuit and material to the ability of Plaintiffs to oppose the motion for summary judgment." (*Id.* ¶ 9.)

## II.   Relevant Procedural Background

Plaintiffs' *qui tam* Complaint was filed under seal on September 15, 2016. (Compl.) In the Complaint, Kraemer asserts two causes of action under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), and a third cause of action for Unjust Enrichment,

---

[2]     According to Ann Hennen, she provided her attorney with crop insurance payment records along with the FSA-578 forms. (Doc. No. 48 ("Rabuse Aff.") ¶ 15, Ex. M ("A. Hennen Dep.") at 13.) Invoices of corn seed purchases were also provided. (*Id.* at 26-27.) There are, however, no written records of where seed was planted. (*Id.* at 31.) Ann Hennen's testimony suggests that other Silverstreak employees would have knowledge of planting locations. (*See id.*)

on behalf of the United States.  (*Id.* ¶¶ 72-81.)  Kraemer and Kraemer Farms, L.L.C.
allege four additional causes of action (the "Kraemer Counts"):  (1) retaliation under the
FCA, 31 U.S.C. § 3730(h), (*id*. ¶¶ 82-87); (2) breach of contract against United and a
number of its partners—Nicholas Ridgeway, Craig Achen, Steven Landwehr, Thomas
Landwehr, Mathew Landwehr,[3] and Robert Hennen—for breach of the United
Agreement with respect to partner compensation, distributions, and management
activities, (*id.* ¶¶ 88-96); (3) declaratory judgment against United and these same partners
for the breach of contract alleged in Kraemer Count Two, (*id.* ¶¶ 97-103); and (4) breach
of contract against Union, (*id.* ¶¶ 104-08).  The Complaint was unsealed on
August 4, 2017 and served on Defendants between August 24 and September 5, 2017.
(*See* Doc. Nos. 18, 25, and 26.)

On July 12, 2017, Allied Dairy, L.L.P.; Union; and United (the "Arbitration
Claimants") filed an arbitration demand with the American Arbitration Association
("AAA") to seek expulsion of Kraemer from these partnerships under Minn. Stat.
§ 323A.0601(5)(iii).  (Doc. No. 38 ("Leistico Decl.") ¶ 5, Ex. 1 ("Demand for
Arbitration") at 1, ¶¶ 10, 11.)  The Arbitration Claimants allege that Kraemer has
engaged in conduct that was detrimental to the partnerships such as refusing to attend
meetings, refusing to sign documents for the partnerships, and engaging in "[h]ostile and
offensive behavior and attitude towards partnership employees."  (*See id.* ¶ 12.)  The

---

[3]      Plaintiffs' Complaint refers to this Defendant as "Matthew Landwehr."  (Doc.
No. 1 ("Compl.") ¶ 6.)  According to Defendants, the proper spelling of this Defendant's
name is "Mathew Landwehr."  (Doc. No. 23 ("Answer") ¶ 6.)  The Court will use
Defendants' spelling.

Arbitration Claimants seek to buy out Kraemer's partnership interests for $2,312,287.15. (*Id.* ¶ 17.)

On July 28, 2017, Kraemer filed an Answering Statement/Counterclaim, objecting to the arbitration, stating that parties' disputes embraced matters beyond the scope of the arbitration demand, and proposing that the arbitration be stayed to permit litigation to proceed. (Leistico Decl. ¶ 6, Ex. 2.) The Honorable Kathleen A. Blatz was appointed to serve as Arbitrator. (Leistico Decl. ¶ 7, Ex. 3.) On October 19, 2017, Kraemer sought to stay the arbitration pending the outcome of this litigation. (*See* Rabuse Aff. ¶¶ 7-8, Exs. E-F.) On November 6, 2017, the Arbitrator denied the motion, explaining that "the reasons for proceeding are substantial and . . . the principal concerns raised by [Kraemer] can be addressed at the evidentiary hearing and appropriately dealt with in the final award." (Rabuse Aff. ¶ 9, Ex. G at 2.) On December 20, 2017, Kraemer sought to stay the arbitration until this Court decides the pending motions. (Rabuse Aff. ¶ 14, Ex. L.)

Presently pending before this Court are (1) Defendants' Motion to Dismiss Kraemer Counts Two and Three[4] in light of the arbitration clause in the United Agreement; (2) Silverstreak's Motion for Summary Judgment dismissal of all claims

---

[4]     Defendants' Motion to Dismiss originally sought dismissal of Kraemer Count Four as well based on the arbitration clause in the Union Agreement. However, while this motion was under advisement, the parties filed a Stipulation of Dismissal of Count IV, (*see* Compl. ¶¶ 104-08). (Doc. No. 66.) The Court thus dismissed this count with prejudice on March 26, 2018. (Doc. No. 68.) To the extent the parties' briefing on the pending motions addressed Count Four, the Court will omit such reference in this order.

against it; and (3) Plaintiffs' Motion to Stay the parallel AAA proceeding.  (*See* Doc.

Nos. 34, 43.)

## DISCUSSION

## I.     Defendants' Motion to Dismiss or Stay

### A.     Legal Standard

Under the Federal Arbitration Act ("FAA"), arbitration agreements within contracts

relating to commercial transactions "shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.  "A court must grant a motion to compel arbitration if a valid arbitration

clause exists which encompasses the dispute between the parties."  *3M Co. v. Amtex Sec.,*

*Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4; *MedCam, Inc. v. MCNC*,

414 F.3d 972, 974 (8th Cir. 2005)).  Courts therefore conduct a two-step inquiry in

evaluating whether to direct arbitration, asking:  "(1) whether a valid agreement to

arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute."  *Pro*

*Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (citing *Gannon v.*

*Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001)).  This is "a limited inquiry"

and courts should be "mindful that 'questions of arbitrability must be addressed with a

healthy regard for the federal policy favoring arbitration.'"  *Houlihan v. Offerman & Co.*,

31 F.3d 692, 694-95 (8th Cir. 1994) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983)).  A court should resolve doubts relating to the

arbitration agreement's scope in favor of directing arbitration.  *See PRM Energy Sys., Inc.*

*v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010).

A motion to dismiss based on a mandatory arbitration provision may be analyzed

pursuant to either Federal Rule of Civil Procedure 12(b)(6) or 56, depending on whether

the court considers matters beyond the pleadings. *See City of Benkelman v. Baseline*

*Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). If such matters are submitted and the

court does not exclude them, the Rule 56 summary judgment standard should apply. *See*

*id.* at 882. Otherwise, the motion may be treated as one under Rule 12(b)(6). *See id.* at

881-82. As a general matter, "the party resisting arbitration bears the burden of proving

that the claims at issue are unsuitable for arbitration." *See Green Tree Fin. Corp.-*

*Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

### B.      Arbitration of Kraemer Counts Two and Three

Defendants argue that the United Agreement mandates arbitration of Kraemer

Counts Two and Three.[5] Defendants emphasize that the arbitration agreement within the

partnership agreement is valid and that these counts arise from the partnership agreement.

Thus, Defendants contend, the FAA requires arbitration of these disputes. Defendants

point out that the language in the arbitration agreement is broad and mirrors language that

has been construed broadly by other courts. Defendants argue that Kraemer Counts Two

and Three are "unequivocally" and "undoubtedly" within the scope of the arbitration

agreement. (Doc. No. 36 at 7.) Defendants also note that an arbitration is already

---

[5]      As noted above, Kraemer Count Four has been voluntarily dismissed by the
parties. The parties' briefing on this motion also discussed the Union Agreement's
arbitration provisions, but the Union Agreement is no longer at issue in light of the
Court's dismissal of Count Four. Thus, the Court will only reference the United
Agreement in analyzing this motion.

underway between the parties and ask the Court to dismiss or stay Kramer Counts Two and Three pending arbitration.  Defendants challenge Plaintiffs' attempt to conflate Kraemer Counts Two and Three with the retaliation claim under the FCA.  According to Defendants, "the question of whether the partnership contracts were breached at all is entirely separate and is clearly encompassed by the arbitration clauses."  (Doc. No. 58 at 2.)  Defendants dispute that the presence of new partners precludes arbitration because each Defendant would consent to proceeding with the arbitration.  Finally, Defendants argue that they should not be obligated to bring an arbitration demand with respect to Kraemer's own claims.

Plaintiffs, on the other hand, contend that the Court should deny Defendants' Motion to Dismiss or Stay because the arbitration agreement "preclude[s] arbitration when, as here, the disputes to be arbitrated require the joinder of parties who cannot be required to arbitrate."  (Doc. No. 47 at 13.)  Plaintiffs point out that the other partners to the United Agreement have reorganized their interests and entered a new partnership agreement with additional entities that would be necessary parties to the resolution of Counts Two and Three.  According to Plaintiffs, because none of these parties or Kraemer Farms, LLC is a signatory to the arbitration agreement under the United Agreement, arbitration of these claims may not proceed.  Plaintiffs further argue that even if these claims are generally subject to arbitration, the Court has the authority to stay the arbitration "when logic calls for threshold claims first to be decided in litigation." (*Id.*)  Finally, Plaintiffs note that Defendants have not moved to demand arbitration of Kramer Counts Two and Three in the ongoing arbitration proceeding.

The Court concludes, as a preliminary matter, that the United Agreement is a contract falling within the scope of the FAA because it relates to the partners' commercial endeavors within various dairy farming businesses. Neither party appears to dispute this conclusion. The Court further concludes that the United Agreement contains a valid and enforceable arbitration agreement, another conclusion which the parties do not appear to challenge. Finally, the Court finds that the arbitration agreement's scope plainly covers the allegations at issue in Kraemer Counts Two and Three. As noted above, the United Agreement provides that "[a]ny claim, dispute or other matter in question arising in connection with the Partnership, this Agreement or any breach thereof, or in connection with the dissolution of the Partnership shall be resolved exclusively by arbitration." (United Agreement § 16.1.) Kraemer Count Two alleges a breach-of-contract claim against United and six individual United partners for alleged violations of the United Agreement, and Kraemer Count Three seeks a declaratory judgment relating to the same alleged breach. These claims are certainly within the broad scope of the United Agreement's arbitration clause.

Plaintiffs oppose arbitration based on Section 16.2 of the United Agreement—the joinder provision. This provision requires the joinder in arbitration of "all parties and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration." (*Id.* § 16.2.) If such parties refuse or cannot be joined, "the arbitration provisions . . . shall be waived and shall not apply." (*Id.*) The Court concludes that Plaintiffs have failed to establish that this provision applies to Kraemer Counts Two and Three such that the arbitration provisions

14

are waived.  Notwithstanding the January 2015 Agreement in which the remaining

United partners reorganized their interests, Defendants have argued that all existing

partners would consent to arbitration of these disputes, and Plaintiffs have not identified

any reason to suggest otherwise.[6]  Furthermore, Kraemer Counts Two and Three allege

damages specific to Kraemer himself and not to Kraemer Farms, LLC, so it is unclear

how Kraemer Farms, LLC would be a required party in order for an arbitrator to afford

complete relief.  In light of the strong national policy favoring arbitration and the clear

application of the United Agreement's arbitration clause to Kraemer Counts Two and

Three, the Court declines to hold that the joinder provision overrides the requirement that

Kraemer arbitrate such disputes.  Thus, Defendants' Motion to Dismiss Kraemer Counts

Two and Three will be granted, and these claims shall be dismissed without prejudice.

## II.     Silverstreak's Motion for Summary Judgment

### A.     Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Courts must view the evidence and all reasonable inferences in the

---

[6]      Notably, the individual partners who entered into the January 2015 Agreement
include Craig Achen, Nick Ridgeway, Robert Hennen, Thomas Landwehr, Steven
Landwehr, and Mathew Landwehr.  (*See* Doc. No. 37 ("R. Hennen Decl.") ¶ 5, Ex. 3 at
1.)  These are the same six individuals Plaintiffs have identified as partners in United and
as Defendants in Kraemer Counts Two and Three.  (*See* Compl. ¶ 6; *see also id.* at 18,
20.)  Of these six, three individuals were signatories to the original United Agreement—
Craig Achen, Robert Hennen, and Thomas Landwehr.  (*See* R. Hennen Decl. ¶ 4, Ex. 2
("United Agreement") at 1.)  All six individuals are represented by Defendants' counsel
in this matter.  (*See* Doc. No. 23 ("Answer") at 1, 20.)

light most favorable to the nonmoving party.  *Weitz Co., LLC v. Lloyd's of London*, 574

F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive

determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

(quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna

Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must demonstrate

the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v.

Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly

supported motion for summary judgment "may not rest upon mere allegation or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for

trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"As a general rule, summary judgment is proper only after the nonmovant has had

adequate time for discovery."  *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d

888, 894 (8th Cir. 2014) (quotation marks and citation omitted).  Under Federal Rule of

Civil Procedure 56(d), a party opposing summary judgment may "show[] by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its

opposition."  Fed. R. Civ. P. 56(d).  If this showing is made, "the court may:  (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

take discovery; or (3) issue any other appropriate order."  *Id.*  To successfully invoke

Rule 56(d) to obtain additional discovery, the nonmovant's affidavit must explain

"(1) what facts are sought and how they are to be obtained; (2) how these facts are

reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant

has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Davis v.*

*Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Johnson v. United States*, 534

F.3d 958, 965 (8th Cir. 2008)).

### B.    Summary Judgment With Respect to Silverstreak

Defendants contend that summary judgment is warranted with respect to all counts

against Silverstreak "because the evidence shows that they have not certified any BMR

corn as grain during the relevant years," undermining Plaintiffs' allegations against it.

(Doc. No. 36 at 9.)  Defendants argue that the record provided to the Court establishes

Silverstreak's entitlement to summary judgment because (1) the Finstrom Declaration

and corresponding documentation identify the instances in which Silverstreak certified

acres as grain on their crop insurance forms; and (2) the Ann Hennen Declaration verifies

that BMR corn was not planted on these acres.  In short, Defendants argue,

"Plaintiff-Relator has fundamentally misjudged the facts as they pertain to Silverstreak."

(*Id.*)  In response to Plaintiffs' opposition, Defendants argue that further discovery will

not provide greater clarity regarding where certain seeds were planted, so Plaintiffs will

be unable to raise a genuine dispute over the evidence Defendants have identified.

Defendants also argue that Ann Hennen's declaration and deposition provide "consistent

and credible" testimony.  (Doc. No. 58 at 7.)

Plaintiffs argue that Silverstreak's summary judgment motion is "frivolous" and contend that Defendants "fail utterly in establishing the absence of a material fact dispute entitling Silverstreak to summary judgment." (Doc. No. 47 at 19.) According to Plaintiffs, Defendants have failed to rebut Plaintiffs' central allegation that Silverstreak obtained crop insurance payments based on fraudulent representations regarding its crop production. In fact, Plaintiffs argue, the record put forward by Defendants instead supports the underlying fraud allegations. Specifically, Plaintiffs note that Ann Hennen's "[d]eclaration does not aver that BMR corn was never certified as grain corn, or that Silverstreak never applied for and received insurance payments on the basis of corn grown from BMR seed being 'grain' as opposed to silage." (*Id.* at 20.) Plaintiffs also suggest that the expedited Ann Hennen deposition revealed that documents provided to Silverstreak's counsel had not yet been produced to Plaintiffs. According to Plaintiffs, Ann Hennen was evasive relating to key questions about potential crop insurance fraud, and "could not say whether Silverstreak ever applied for and received grain corn insurance payments for crop losses on corn grown from BMR-silage seed."[7] (*Id.* at 22.)

---

[7] In particular, Plaintiffs point to the following exchange at Ann Hennen's deposition:

> Q: Have you had any discussions with your other members of Silverstreak where any of your partners have taken the position that corn grown from BMR can be used for human consumption?
> A: No.
> Q: Have you ever received a payment for a BMR seed crop loss based on its being a grain corn?
> A: I'm unsure.

(Footnote Continued on Next Page)

Finally, Plaintiffs argue that Silverstreak's Motion for Summary Judgment is premature. Plaintiffs' counsel has submitted an affidavit under Federal Rule of Civil Procedure 56(d) attesting to the necessary discovery not yet received to adequately respond to the motion.[8]

The Court concludes that summary judgment against Silverstreak would be premature at this juncture. The Finstrom and Ann Hennen Declarations do not establish that key issues relevant to Silverstreak's liability are undisputed such that Silverstreak is entitled to judgment as a matter of law. In particular, Ann Hennen's verifications regarding particular types of corn planted pertain to only 2014, and the Court has identified acres of corn certified as grain on Silverstreak's FSA-578 form for Benton County in 2015. (*See* Second Supp. Finstrom Decl. ¶ 2, Ex. E at E-47.) It is also apparent that Ann Hennen's credibility is critical to Defendants' position, and it would be improper for the Court to rely solely on her testimony and declaration in granting summary judgment at this stage.

In addition, even though Plaintiffs' allegations against Silverstreak make specific reference to BMR corn only, Plaintiffs also generally allege that Robert Hennen "falsely certified that he grew conventional corn, certified that he sustained a loss, and obtained

---

(Footnote Continued From Previous Page)
(Doc. No. 47 at 22 (quoting A. Hennen Dep. at 35-36).)

[8]     Plaintiffs also argue that Defendants failed to meet and confer under the Local Rules prior to filing their Motion for Summary Judgment. Local Rule 7.1(a), however, does not require a meet-and-confer prior to filing a motion under Federal Rule of Civil Procedure 56. *See* L.R. 7.1(a).

crop insurance proceeds as a result of his false representations." (Compl. ¶ 71.)  Thus, the Complaint does not limit Plaintiffs to only establishing their claims on the basis of false BMR corn certifications.  To the extent other types of corn may have been falsely certified as grain corn, the record is incomplete.

To be sure, it is possible that additional discovery will reveal that Silverstreak is plainly entitled to summary judgment in its favor.  At this stage, however, such a determination would be improper.  Therefore, Silverstreak's Motion for Summary Judgment is dismissed without prejudice.[9]

## III.   Plaintiffs' Motion to Stay Arbitration

Plaintiffs have filed a Motion to Stay Arbitration, seeking an order from this Court "to stay the pending arbitration, Case. No. 01-17-0004-0644."  (*See* Doc. No. 43.) Plaintiffs raise similar arguments as previously discussed relating to the Arbitration Agreements' joinder provisions as well as the Court's authority to stay arbitration where issues should initially be decided in litigation.  Defendants oppose Plaintiffs' motion.

The Court concludes that it lacks independent authority to stay the pending arbitration proceeding brought by Union, United, and Allied Dairy, L.L.P. seeking to expel Kramer from these partnerships.  Although the ongoing arbitration and this lawsuit include a number of the same parties, the AAA proceeding did not arise in this forum, and Plaintiffs have failed to demonstrate the authority by which the Court could direct a

---

[9]     Because the Court concludes that Silverstreak has failed to demonstrate its entitlement to summary judgment on the existing record, the Court need not resolve whether Plaintiffs' Rule 56(d) Affidavit provides an independent basis for denying Silverstreak's motion at this stage.

pending arbitration to be stayed.  Importantly, however, even if the Court did have such authority, it would decline to stay the ongoing arbitration proceeding.  The Supreme Court has explained that Congress's primary concern in promulgating the FAA "was to enforce private agreements into which parties had entered."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Thus, a court must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute."  *Id.*  Consistent with these principles, a court may properly direct that some claims be arbitrated while maintaining other claims in federal court.  *See id.* at 216-24.

Kraemer agreed to arbitrate claims arising under the Union and United Agreements.  (*See* Union Agreement § 16.1; United Agreement § 16.1.)  Although it may result in parallel and potentially overlapping proceedings, adjudicating Plaintiffs' *qui tam* lawsuit in this Court while the arbitration proceeds is the appropriate course in this matter.  Indeed, the Arbitrator in the ongoing proceeding, the Honorable Kathleen A. Blatz, has already determined as much and has acknowledged the ability to shape the outcome of the arbitration to accommodate Plaintiffs' concerns.  Plaintiffs' Motion to Stay Arbitration is therefore denied.

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motions to Dismiss (Doc. No. [34]) are **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      Defendants' motions are **GRANTED** with respect to

Kraemer Counts Two and Three, (Doc. No. 1 ¶¶ 88-103), which are subject

to mandatory arbitration.  These counts are therefore **DISMISSED**

**WITHOUT PREJUDICE**.

b.      Defendants' motions are denied in all other respects.

Specifically, Silverstreak's Motion for Summary Judgment is **DENIED**

**WITHOUT PREJUDICE**.

2.      Plaintiffs' Motion to Stay Arbitration (Doc. No. [43]) is **DENIED**.

Dated:  July 6th, 2018                           s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge